## Webb *v.* Webb.

*Proceeding to enforce Payment of Alimony pending Suit for Divorce.*

1. *Divorce suit; when husband should not be committed for contempt for failure to pay alimony pendente lite.*—A court in which a bill for divorce has been filed by a husband, should not commit the complainant for contempt for failing to pay alimony to his wife pending his suit against her for divorce, which, by proper decree of the court he had been ordered to pay, when it is made to appear to the court that the complainant has no property or means and is utterly unable to pay the alimony as ordered.

2. *Same; same.*—In such a case, where it appears that the complainant was without employment, the court is without power or authority to compel him to work and earn money sufficient to pay the alimony as ordered; and upon his refusal to do so, the court can not commit him for contempt.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

Albert E. Webb, the appellee, filed in the court below his bill for divorce from his wife, Mattie Webb, the appellant, on account of abandonment.

[Webb v. Webb.]

The defendant filed answer denying the grounds set up for divorce, and averred she was driven from home by no fault of hers, but by her husband's cruel and inhuman treatment. She filed her petition in the cause praying that the plaintiff be required to pay to her a reasonable sum for her support and maintenance during the pendency of the suit for divorce, and for such sum as might be necessary to enable her to carry on her defense, to defray the necessary costs and expenses thereof and for the necessary and proper fees of her attorneys in defending her in the suit.

The court upon this petition referred it to the clerk and register to ascertain, upon a reference to be held by him, what would be a proper amount to allow petitioner for her solicitor's fees in the cause, and what would be a proper amount to allow her out of her husband's estate for alimony *pendente lite.*

The clerk and register executed the reference, and reported that $50 would be a proper allowance for a solicitor's fee, and $25 a month for her support and maintenance during the pendency of the suit. This report was confirmed by the court, and it was ordered that complainant pay to respondent $50 for her solicitor's fee, $50 for alimony *pendente lite,* which had accrued before the date of the decree, which sums it was ordered he should pay within ten days, after which date, execution might issue therefor. It was further ordered and decreed, that in addition to said sums, he should pay defendant $25 per month, payable on the 5th of each month, for her alimony pending the suit, the first installment to be paid on the 5th of November, 1902.

More than ten days after the date of this decree, the respondent filed her written motion in court, reciting that complainant had not complied with the order of the court for the payment of any of said sums allowed her, but had failed and refused to do so, and prayed the court for process of attachment against the person of complainant, and that he be held for contempt of court for his non-compliance with his orders, until he purged himself thereof. A rule *nisi* was issued against complainant to appear and show cause why he should not be pro-

[Webb v. Webb.]

ceeded against for contempt, and commanding him to abstain from further proceedings in the case until such hearing.

The complainant filed his return to said rule, which was duly verified, in which he disclaimed any contempt or disrespect to the court in failing to comply with its orders to pay said sums of money, and represented to the court that he was wholly without means with which to pay said decree; that he did not have at the time the decree was rendered, nor since, any money or means with which to satisfy said decree; that he had no money or property with which to do so, and had had none since said decree was rendered; that he had no means of paying the same without borrowing the money, and was without property on which to give a lien to secure the same; that he was without employment at present, and had had none since the decree was rendered, by which to make the money to pay the same, and averred his willingness and readiness to pay the decree as soon as he might be able to procure the money with which to satisfy the same. He asked to be discharged, professing his readiness and willingness to abide by any decree of the court, to the extent of his ability.

The court held that it could not compel the complainant to labor and earn an income with which to satisfy said decree, and could not adjudge him guilty of contempt in not so doing. It was, therefore, ordered that respondent's motion be overruled, and that complainant should in all respects stay the prosecution of his said suit for divorce, until he complied with the decree of the court.

From this decree and order the respondent appeals; and assigns the rendition thereof as error.

SHUGART & BELL, for appellant.—The present case is where the husband institutes a proceeding against his wife for divorce, where he has the "facilities" to procure for her support *pendente lite* and where the order is made requiring him to do so, and he refuses. The contempt consists in his refusal to pay according to his ability as already in-

quired into and adjudicated.—*Jacobs v. Goetter*, 74 Ala. 427; *Nussina v. Bartlett*, 8 Port. 227; *Adair v. Gilmore*, 106 Ala. 436.

If the husband is out of employment he must seek it.—Stewart on Divorce, § 373; *Muse v. Muse*, 84 N. C. 35; *Pain v. Pain*, 80 N. C. 322.

The burden is on him to show his inability to pay. *Raht v. Raht*, 14 L. R. A. 438.

In every well considered case where alimony has been decreed the ability of the husband "his faculties" have been well considered.—*Lovett v. Lovett*, 11 Ala. 771; *Jones v. Jones*, 131 Ala. 443.

J. B. AIRD and A. O. LANE, *contra*.—There is only one question raised by this appeal. The appellant contends that a chancery court has jurisdiction and power to imprison a party as a means to compel him to work and earn money with which to pay alimony to his wife in a suit for divorce. The appellee denies any such power. Temporary alimony is essentially an allowance out of the estate of the husband.—Code, § 1495. Where there is no estate, there can be no temporary alimony. *Feighley v. Feighley*, 61 Am. Dec. 380.

We might call the court's attention to the case of the *Iron Age Publishing Company v. The Western Union Telegraph Company*, in which the court uses this language: "Equity will not enforce the performance of continuous duties involving personal labor and care of a particular kind, while the court cannot superintend."

HARALSON, J.—The only question presented for review is, whether the court erred in refusing to commit the complainant for contempt for his failure to pay alimony to his wife, pending his suit against her for a divorce which, by the proper decree of the court, he had been ordered to pay.

It is not questioned, that the court, pending the suit for divorce, had the right, and it was its duty to exercise it, to "make an allowance for the support of the wife out of the estate of the husband."—Code, § 1495; *Brindley v. Brindley*, 121 Ala. 429.

[Webb v. Webb.]

A common method of enforcing orders or decrees for alimony is by attachment for contempt; and when the husband has the means or estate out of which alimony may be paid, and he willfully and contemptuously refuses to do so, no good reason exists why he may not be compelled to do so by attachment.

The attachment is designed to enforce compliance with the order, and not to punish for being unable to perform it.—*Ormsby v. Ormsby,* 1 Phila. Repts. 335. It was said in this case: "From this, (the duty in a proper case to provide alimony to the wife *pendente lite*), the husband cannot escape, unless he be destitute of all ability, in which case, if he be the libellant, the court will not require him to pay, but will suspend the suit until provision is made for the wife.—6 Eng. Eq. Repts. 391; 3 Edwards, C. R. 194." It was further said, the attachment "will not be issued, when the court is satisfied that the party is destitute of the means of making the required payments."

In *Pain v. Pain,* 80 N. C., it was said: "But inability to comply with an order, unlike the commitment for costs, is an answer to a rule to enforce it, and when made to appear, discharges from its obligation."

In *Steller v. Steller,* 25 Mich. 159, COOLEY, J., for the court, said: "There must be in the case something wrong beyond the mere failure to pay money; and the party, before he can be convicted and punished for it, must have an opportunity to be heard in his own explanation. * * * His inability to pay may be so absolute, as to constitute an effectual excuse." Again it was said by McCAY, J., in *Carlton v. Carlton,* 44 Ga. 216: "It must be remembered, also, that the imprisonment by a judge for contempt, is always conditional, and is at his discretion, and may, at any time, by the same discretion, be discharged. And very clearly, it ought never to be resorted to, except as a penal process, founded on the unwillingness of the party to obey. The moment it appears there is *inability,* it would clearly be the duty of the judge, to discharge the party, since it is only the contempt, the disobedience upon which the power rests."

The principle seems to be well formulated in note IX, with citation of many authorities, in the case of *Staples v. Staples,* reported in 24 L. R. A. 433, in the following language: "Where the neglect or refusal is not from mere contumacy, but from the want of means, the result of misfortune not induced by any fraudulent conduct on the defendant's part, the party will be compelled to adopt some other mode than imprisonment, to enforce the decree consistent with the practice of the courts, either by execution or other final process; or by sequestration of the real or personal estate, or by the exercise of such other powers as pertain to courts of chancery, and which may be necessary to the attainment of justice."

In the case in hand, the court found that at the time of said decree for alimony, and at the time of the hearing of the motion for commitment for contempt, the complainant was without means to pay the alimony except by earnings which he was capable of making should he make the proper effort to do so, and that he willfully refused to do it; but it held, that the court was without power to compel him to labor and earn an income with which to satisfy said decree, and, therefore, could not adjudge him guilty of contempt. We find no evidence in the transcript touching his ability to pay the decree out of money, property or income, except that contained in his sworn return to the rule *nisi.* In that, he declares he has no money or property with which to pay; that he has no employment, nor has he had since the rendition of the said decree, out of which to earn the money to make the payment, and avers his readiness and willingness to pay said decree as soon as he may be able to procure the money. There seems to be no dispute about complainant being unable to pay the decree out of money or property, and the court so held. The only remaining insistence is, that he is able to work and will not work, to earn the money to make the payment, and the court ought to commit him for default in this respect. It is difficult to understand how the desired result was thus to be accomplished, and how the court would go about it. If complainant would not labor, the court was with-

[Jones *et al.* v. Bright.]

out power to inflict corporeal punishment to compel him. If it imprisoned him until he was willing to work, that would not have produced money, meantime, but would have entailed expense for the imprisonment; and if imprisoned and he should relent and come in and signify his willingness to labor, employment would have to be obtained for him, by the court, by himself or some one else; and how the court would have proceeded legally to hire him out, or supervise him, if he hired himself, and collect the money for application to its decree, has not been made to appear. In any effort in this direction it might undertake, the court would be careful not to violate the law against peonage for the sake of earning money. Such an effort, if undertaken, might involve the court and its agents in trouble, into which we would not knowingly induce or compel them.

Here, the alimony sought is temporary, the complainant had no money or property which the court could reach and appropriate by any of its processes to that end, and the only other means at hand were to compel him to obtain employment, and labor and save money with which to satisfy the decree.

We are satisfied that the court did not err in the decree it rendered. Under it, the complainant cannot proceed with his suit for divorce, without complying with said decree.

Affirmed.